E-FILED
Wednesday, 24 June, 2026  11:09:47 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cr-40029-SLD-RLH-1 |
| | ) | |
| STEVEN LOUIS MORGAN, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court is Defendant Steven Louis Morgan's motion to suppress, ECF No. 16. For the reasons that follow, the motion to suppress is GRANTED.

**BACKGROUND**

On July 12, 2025, Morgan was riding on his motorcycle when Officer Nathan Lewis, then a police officer with the Galesburg Police Department, observed him fail to initiate his turn signal at least a hundred feet prior to turning, in violation of the Illinois Vehicle Code. Officer Lewis began following Morgan, and, after several blocks, obtained the license plate number for dispatch. Dispatch then informed Officer Lewis that the motorcycle's registration was suspended. Officer Lewis continued following Morgan and testified that he suspected Morgan might flee if he activated his emergency lights immediately because Morgan had been repeatedly circling the same few blocks in a manner Officer Lewis found suspicious. Officer Lewis told dispatch that he would attempt to make contact when Morgan pulled into a driveway, both because of safety concerns and to allow time for the requested backup to arrive.

When Morgan turned into the driveway of a residence on North Broad Street ("the Broad Street residence"), Officer Lewis accelerated and followed him. Officer Lewis testified that he activated his emergency lights when the rear tires of his squad car were still touching the public

1

sidewalk.  At that moment, Morgan was in the far rear section of the driveway beyond the rear plane of the residence.  After Officer Lewis activated his lights, Morgan dropped his motorcycle and ran into the backyard.  Officer Lewis pursued Morgan into the backyard and ultimately arrested him.  When searching Morgan incident to the arrest, Officer Lewis recovered methamphetamine and a cell phone from Morgan's person.

The Broad Street residence is a multi-unit dwelling owned by Morgan's sister, Kay Pedigo Norville.  Morgan had been living there since approximately 2023.  Although the property contained multiple units, and portions of it were at times occupied by others, the evidence established that Morgan and Norville functionally used the property as a shared home rather than as a strictly segregated multi-unit residence.  Morgan had no formal lease and did not pay rent on any consistent schedule, though he would sporadically contribute money to Norville.

Morgan and Norville each had broad access to the entire property.  Norville testified that Morgan had keys to every room in the house, including access to both front entrances, the basement, the garage, the backyard, and the side yard.  The doors between their respective living areas remained unlocked, allowing each to move freely between units.  Norville could access Morgan's upstairs apartment through an interior connecting door, and Morgan could similarly enter Norville's living space without going outside.

The property included a long driveway and parking pad extending alongside and behind the house, a gazebo, and a backyard enclosed by fencing except at the driveway entrance. Morgan regularly used the rear portion of the driveway and the garage to work on people's cars. Morgan was permitted to bring guests, although Norville expressed displeasure with some of the guests Morgan brought to the property.  Norville would sometimes ask Morgan to remove people from the property.  The precise extent of Morgan's authority to exclude others from the property

2

was not clear; however, he monitored cameras on the property and at times asked unwanted individuals to leave.

Morgan is a registered sex offender. His probation officer informed him that he could not reside at the Broad Street residence because the property was located within 500 feet of a daycare and therefore violated his residency requirements under 720 ILCS 5/11-9.3(b-10). Both Morgan and Norville were aware of this restriction. Despite that prohibition, Morgan continued living at the Broad Street residence while registering with law enforcement as living at a residence on Knox Street, which was actually an abandoned house formerly belonging to his ex-wife. Morgan later told law enforcement and his federal probation officer that he had moved to a residence on East Fifth Street, but he in fact continued residing at the Broad Street residence with his sister.

## DISCUSSION

### I.      Legal Standard

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A warrantless intrusion into a constitutionally protected place or piece of property is generally unreasonable. *See Lange v. California*, 594 U.S. 295, 301–03 (2021). A defendant seeking to suppress evidence based on an alleged Fourth Amendment violation bears an initial burden of establishing that he has a right to challenge the government's search or seizure, either because he has a property interest in the "houses, papers, [or] effects" searched, U.S. Const. amend. IV, or because he has both a subjectively and objectively reasonable expectation of privacy in the places or things searched or seized, *Rakas v. Illinois*, 439 U.S. 128, 151 (1978) (Powell, J., concurring); *United States v. Walker*, 237 F.3d

3

845, 849 (7th Cir. 2001); *see United States v. Sanford*, 806 F.3d 954, 957 (7th Cir. 2015) ("We are mindful that the Supreme Court[] in *Rakas* . . . said that it was better to ask whether a person asserting a Fourth Amendment right has a personal 'interest' that the search infringed than whether he has 'standing' to challenge the search."). The government bears the burden of demonstrating that an exception to the warrant requirement applies. *See United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000).

## II.    Analysis

Morgan argues that Officer Lewis entered the curtilage of his home without a warrant and, therefore, Officer Lewis violated his Fourth Amendment right to be free of unreasonable searches and seizures when Officer Lewis arrested him, searched him, and seized his property. Mot. Suppress 1. The Government argues that Morgan has not shown that "he was arrested in a constitutionally protected area"; that even if he could make such a showing, warrantless seizure was warranted because of exigent circumstances; and that even if a Fourth Amendment violation is established, the evidence should not be suppressed because the attenuation doctrine applies. Resp. Mot. Suppress 1, ECF No. 18. After an initial hearing, the Court requested briefing on whether Morgan's sex offender status and its attendant residency requirements "preclude[] him from asserting his Fourth Amendment rights" in the Broad Street residence. Apr. 21, 2026 Min. Entry. The Government filed a supplemental brief arguing that because Morgan "was on notice that he was statutorily prohibited from residing at this specific residence due to his status as a sex offender, . . . any subjective expectation of privacy he may have had was not one that society would be prepared to accept as reasonable." Gov't Suppl. Br. 1–2, ECF No. 33. Morgan filed a supplemental brief arguing, as primarily relevant here, that "[b]ecause he lived at the home, he

4

ha[d] the full protection of the Fourth Amendment in his home and its curtilage," even if a sex offender statute would prohibit him from living there. Def. Suppl. Br. 1–2, ECF No. 34.

### 1. Preliminary Findings

The Court has already made a few factual findings on the record that narrow the scope of the analysis to be conducted. First, the Court found that Morgan resided at the Broad Street residence Norville owned and had been treating it as his residence for at least one year prior to the search and seizure. Second, the Court found that the Broad Street residence was within 500 feet of a daycare and thus it violated 720 ILCS 5/11-9.3(b-10) for Morgan to live there. Third, the Court found that, although there were multiple apartments within the Broad Street residence, Morgan and Norville shared access to the entrances and common areas of the home, including the backyard and back area of the driveway. Because of the way Morgan and his sister used the home, it is appropriate to treat it like a single dwelling rather than as a multi-tenant building. *Cf. United States v. Villegas*, 495 F.3d 761, 768 (7th Cir. 2007) ("Nor did Mr. Villegas present any evidence that suggests that he and his sister were related to the Franklins, such that the duplex in its entirety should be considered a single dwelling . . . ." (citing *United States v. King*, 227 F.3d 732, 749–50 (6th Cir. 2000))).

Next, the Court made a few findings that dictate the result of the government's exigent circumstances argument. The Court found both that (1) the curtilage of the home began at least at the front plane of the residence and extended through the back part of the driveway and the backyard and (2) Morgan was within the curtilage when Officer Lewis initiated the seizure. The Court also found that there was nothing particularly suspicious about Morgan riding his motorcycle repeatedly around the same neighborhood on a summer day.

Warrantless entry into a home to make an arrest is reasonable if exigent circumstances justify it. *See Lange*, 594 U.S. at 301. In *United States v. Santana*, 427 U.S. 38, 42–43 (1976), the Supreme Court held that exigent circumstances supported the police's warrantless entry into a home when the police were in hot pursuit of a felony suspect. The Court stated that "a suspect may not defeat an arrest which has been set in motion in a public place." *Id.* at 43. The Government cannot establish exigent circumstances based on Officer Lewis's pursuit of Morgan because the arrest was not set in motion in a public place—Morgan was already within the curtilage of the home when Officer Lewis began the attempt to seize him.[1]

Even if the Court considered the merits of the Government's exigent circumstances argument, it would fail. The Supreme Court has held that "pursuit of a fleeing misdemeanor suspect" does not always qualify as an exigent circumstance justifying warrantless entry into a home. *See Lange*, 594 U.S. at 299, 313. "An officer must consider all the circumstances in a pursuit case to determine whether there is a law enforcement emergency." *Id.* at 313. "When the nature of the crime, the nature of the flight, and surrounding facts present no such exigency, officers must respect the sanctity of the home—which means that they must get a warrant." *Id.* at 309. "On many occasions, the officer will have good reason to enter—to prevent imminent

---

[1] The Government argued at the second suppression hearing that *Santana* supports finding that, because Morgan was visible to Officer Lewis from the driveway, the arrest began in a public place even if Morgan was already within the curtilage of the home. In *Santana*, the public place was the open doorway to the defendant's home, and the Court noted that the defendant was "not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Santana*, 427 U.S. at 42. But as other courts have noted, *see, e.g.*, *Hess v. Village of Bethel*, No. 1:22-cv-56, 2024 WL 3327761, at *7 n.2 (S.D. Ohio July 8, 2024), the conclusion that a residential doorway is a public place seems hard to square with *Florida v. Jardines*, 569 U.S. 1 (2013), in which the Supreme Court stated that the core of the Fourth Amendment is "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion" and held that a front porch is part of the curtilage that is entitled to be treated "as part of the home itself for Fourth Amendment purposes." *Id.* at 6–7 (quotation marks omitted). And, in any case, Morgan was not standing in an open front entrance—which any person from the public, including a police officer, could approach, *see id.* at 8—he was in the back portion of the driveway beyond the rear plane of the residence.

6

harms of violence, destruction of evidence, or escape from the home.  But when the officer has time to get a warrant, he must do so—even though the misdemeanant fled."  *Id.* at 313.

The facts do not support finding that exigent circumstances justified Officer Lewis's warrantless entry here.  First, it is not clear that this can be considered pursuit of a fleeing suspect—though Officer Lewis had been following Morgan and had observed him fail to signal and learned that the motorcycle's registration was suspended, Officer Lewis did not attempt to seize Morgan until he was already beyond the rear plane of the home.  *See Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984) ("[T]he claim of hot pursuit is unconvincing because there was no immediate or continuous pursuit of the petitioner from the scene of a crime.").  Second, the only offenses Morgan was suspected of committing were minor traffic violations for which he could face no jail time.  *See id.* at 750 ("When the government's interest is only to arrest for a minor offense, th[e] presumption of unreasonableness [for a warrantless arrest in the home] is difficult to rebut . . . .").  And third, no evidence was presented that at the time that Officer Lewis physically intruded into the curtilage, he had reason to believe that warrantless entry was necessary to prevent violence or destruction of evidence.  There was also nothing, at the time of Officer Lewis's entry into the curtilage, that would suggest that entry was necessary to prevent Morgan's escape from the backyard—Morgan did attempt to jump over a fence, but not until Officer Lewis was already within the curtilage.  *United States v. Banks*, 60 F.4th 386, 389 (7th Cir. 2023) (holding that officers who unlawfully enter curtilage cannot rely on exigent circumstances that develop after their "unlicensed physical intrusion" onto the property (quotation marks omitted)).  And even if there was, the minor nature of the offenses did not justify a warrantless entry into the home's curtilage simply to ensure Morgan was written a ticket.  While it may be reasonable for police to enter a home or its curtilage without a warrant to

ensure that someone who has committed a dangerous crime does not evade arrest, the police's interest in ensuring that a driver receives a traffic ticket is not so weighty.

Equally unavailing is the Government's attenuation doctrine argument. Under the attenuation doctrine, "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Utah v. Strieff*, 579 U.S. 232, 238 (2016) (quotation marks omitted). The Government's attenuation argument is that "at the time Officer Lewis effectuated the arrest . . . [Morgan] had an active warrant for his arrest, making it lawful for police to enter his home." *See* Resp. Mot. Suppress 23. However, the Government has submitted no evidence that there was an active warrant for Morgan's arrest at the time Officer Lewis arrested and searched Morgan. The warrant the Government attached to its response to the motion to suppress was signed on August 4, 2025, *see* Warrant, Resp. Mot. Suppress Ex. 2, ECF No. 18-2, but the arrest and search at issue here occurred on July 12, 2025. When Morgan's counsel pointed this out at the second hearing held on the motion to suppress, Government counsel indicated she was not aware that the warrant postdated the arrest. She then pivoted to arguing that the record supported finding that there was an active warrant because someone can be heard on the dash camera footage saying that Morgan had a warrant for his arrest. This is hearsay and is insufficient to prove that there was in fact an active warrant on July 12, 2025.

Resolution of the motion to suppress, then, comes down to whether Morgan had a Fourth Amendment interest in the Broad Street residence and its curtilage. In the Court's view, this case exposes many unanswered questions about current Fourth Amendment jurisprudence.

### 2. Property-Based Interest

"[F]or most of our [country's] history the Fourth Amendment was understood to embody a particular concern for government trespass upon the areas ('persons, houses, papers, and effects') it enumerates." *United States v. Jones*, 565 U.S. 400, 406 (2012); *id.* at 405 ("The text of the Fourth Amendment reflects its close connection to property. . . . Consistent with this understanding, our Fourth Amendment jurisprudence was tied to common-law trespass, at least until the latter half of the 20th century."). Later, the Supreme Court "deviated from that exclusively property-based approach," *id.* at 405, recognizing that the Fourth Amendment's protections could apply even if there was no physical intrusion into an area specifically included in the amendment's text, *see, e.g.*, *Katz v. United States*, 389 U.S. 347, 353 (1967). *Katz* introduced a new test for determining whether a person has a Fourth Amendment interest that asks whether he has a "constitutionally protected reasonable expectation of privacy." *Id.* at 360 (Harlan, J., concurring). The test has two elements: first, the person must have exhibited a subjective expectation of privacy; second, that expectation must be "one that society is prepared to recognize as 'reasonable.'" *Id.* at 360–61. For the next few decades, courts applied this reasonable expectation of privacy test to determine whether an individual had a Fourth Amendment right in a particular place or piece of property searched or seized.

The Supreme Court then clarified in *Jones* that "*Katz* did not narrow the Fourth Amendment's scope." *Jones*, 565 U.S. at 408. It explained that while *Katz* recognized that "property rights are not the sole measure of the Fourth Amendment violations," it "did not snuff out the previously recognized protection for property." *Id.* at 407 (quotation marks and alteration omitted). The Supreme Court further confirmed that property rights remain relevant to Fourth Amendment protections in *Florida v. Jardines*, 569 U.S. 1 (2013), when it explained that "the

9

*Katz* reasonable-expectations test has been *added to*, not *substituted for*, the traditional property-based understanding of the Fourth Amendment . . . ." *Id.* at 11 (quotation marks omitted); *see also id.* at 5 (holding that while "*Katz* may add to the baseline" of Fourth Amendment protection—in that it recognizes Fourth Amendment protections outside of areas like a home—"it does not subtract anything from the Amendment's protections when the Government *does* engage in a physical intrusion of a constitutionally protected area" (quotation marks and alterations omitted) (emphasis in original)).

Accordingly, after *Jones* and *Jardines*, there are two ways a defendant can show a Fourth Amendment interest that allows him to challenge a search or seizure: he can show a property-based interest or a privacy-based interest.  Morgan argues he has both, and also that because he has a property-based interest in the Broad Street residence, he need not show a reasonable expectation of privacy.  *See, e.g.*, Def. Suppl. Br. 5, 18–19.

There is language in *Jardines* suggesting that property and privacy are independently sufficient interests, *see Jardines*, 569 U.S. at 11 (explaining that it is "unnecessary to consider [the reasonable expectations of privacy test] when the government gains evidence by physically intruding on constitutionally protected areas"), the upshot of which would be that there is no occasion to consider societal expectations of privacy if a property interest exists.  In this case, this would mean that if Morgan has a property-based interest, the Court would not consider whether society would recognize as a reasonable a sex offender's expectation of privacy in a home in which he is statutorily barred from residing.

But it is not clear if that is an accurate application of *Jones* and *Jardines*.  When it has applied both the property and privacy interest analyses, the Seventh Circuit has applied a "blended approach."  *United States v. Correa*, 908 F.3d 208, 217 (7th Cir. 2018) (citing *United*

*States v. Sweeney*, 821 F.3d 893, 902–03 (7th Cir. 2016) and *United States v. Thompson*, 811 F.3d 944, 948 (7th Cir. 2016)).  Sometimes courts, including the Seventh Circuit, have applied only the reasonable expectation of privacy test, even when the circumstances of the case suggest a property-based interest could exist.  *See, e.g.*, *United States v. Thomas*, 65 F.4th 922, 923–25 (7th Cir. 2023) (considering whether a tenant who signed a lease using an alias had a reasonable expectation of privacy in his condo without considering whether he had a property-based interest).  And in her *Jardines* concurrence, Justice Kagan opined that the case—which involved use of a drug-sniffing dog on the front porch of a home—could have been decided on privacy grounds, noting that "[i]t is not surprising that in a case involving a search of a home, property concepts and privacy concepts should so align."  *Jardines*, 569 U.S. at 13 (Kagan, J., concurring).

The Court need not answer that question, though, because it finds that Morgan has not met his burden to show that he has a property-based Fourth Amendment interest in the Broad Street residence.  At the outset, the Court notes that it is not clear what Morgan needs to establish in order to show a property-based Fourth Amendment interest: property rights under a specific state law, property rights under common law now, property rights under common law at the time the Fourth Amendment was enacted?  *See* Orin S. Kerr, *The Two Tests of Search Law: What is the* Jones *Test, and What Does That Say About* Katz*?*, 103 Wash. Univ. L. Rev. 309, 311 (2025) ("Different courts use different standards.  Some courts use trespass law in 1791, when the Fourth Amendment was ratified.  Others use trespass principles from 1868, when the Fourteenth Amendment was ratified.  Some use the First Restatement of Torts, and many use the Second Restatement of Torts.  Some mix and match." (footnotes omitted)).

11

The Seventh Circuit in *Sweeney* held that "to establish a Fourth Amendment violation under th[e property interest] approach, there must be some trespass upon one of the protected properties enumerated by the Constitution's text" and that "[t]his in turn requires courts to consider the scope of trespass at common law." *Sweeney*, 821 F.3d at 899. The court then looked to the Second Restatement of Torts as "a good starting point." *Id.* Under definitions from the Restatement, the court concluded that "to prove a claim of trespass, one must have possession of the property in question and the ability to exclude others from entrance onto or interference with that property." *Id.* at 900. The court then looked to Indiana law to determine who could bring an action for trespass in the relevant location (a common basement). *Id.* In another case, the Seventh Circuit looked to Illinois property law to determine whether the individual claiming a property-based Fourth Amendment right had a lease or tenancy under Illinois law rather than a mere license, which would neither grant nor ripen into an interest in land. *See Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 514–15 (7th Cir. 2020).

Following *Dix* and *Sweeney*, the Government argues that because none of the elements of a traditional lease under Illinois law were present, Morgan is a mere licensee rather than a tenant with a possessory interest in the property and an ability to bring a trespass action. Gov't Suppl. Br. 7–8. In Illinois, "the essential elements of a lease include: (1) the extent and bounds of the property; (2) the term of the lease; (3) the amount of rent; and (4) the time and manner of payment." *Millenium Park Joint Venture, LLC v. Houlihan*, 948 N.E.2d 1, 19 (Ill. 2010). Though there was testimony that Morgan paid rent sometimes, no information was provided about the amount of rent due, the time and manner of payment, or the term of any purported lease. Accordingly, the Court was not presented with sufficient information from which it could find that Morgan had a lease under Illinois law. And though Morgan argued in a brief filed

before the initial hearing that he had "possession of the property and the ability to exclude others from the property," so under *Sweeney*, his Fourth Amendment rights to the entire property are protected, Def. Reply 11, ECF No. 21, he cites to no case law that supports that he had a legally cognizable possessory interest under any property law.

After the hearing, Morgan shifted to arguing that he need not show that he had a lease or ability to bring a trespass action because under *Collins v. Virginia*, 584 U.S. 586 (2018), "his Fourth Amendment protection became coextensive" with his sister's because he was an overnight guest. *See* Def. Suppl. Br. 5–7. The Court disagrees with Morgan's contention that *Collins* stands for the proposition that an overnight guest has a property-based Fourth Amendment interest in his host's home. The defendant in *Collins* objected to a search of a vehicle parked at his girlfriend's house where the defendant "stayed . . . a few nights per week." *Collins*, 584 U.S. at 589. The Supreme Court noted that the parties did not contest the defendant's Fourth Amendment interest in the girlfriend's house, citing to *Minnesota v. Olson*, 495 U.S. 91, 96–100 (1990). *Collins*, 584 U.S. at 589 n.1. In *Olson*, the Supreme Court held that a defendant's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Olson*, 495 U.S. at 96–97. The Supreme Court relied on prior case law holding that "a person can have a legally sufficient interest in a place *other than his own home* so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." *Id.* at 97– 98 (emphasis added) (quoting *Rakas*, 439 U.S. at 141–42). The overnight guest line of cases relies on the reasonable expectation of privacy rationale because, in those cases, the home searched is *not* the defendant's home. While an overnight guest that has a reasonable expectation of privacy in his

13

host's home may have the same scope of Fourth Amendment rights at that home as the host, the Court fails to understand how that gives the overnight guest a property interest in the home.

Morgan has not met his burden to show that he has a property-based Fourth Amendment interest that entitles him to challenge his seizure and search at the Broad Street residence.

### 3. Privacy-Based Interest

Even if Morgan does not have a property-based Fourth Amendment interest, however, he could have a privacy-based interest. As a reminder, an individual has a Fourth Amendment interest if he has both a subjectively and objectively reasonable expectation of privacy in the places or things searched or seized. *Rakas*, 439 U.S. at 151 (Powell, J., concurring). That Morgan had a subjective expectation of privacy is not disputed by the parties, so the Court discusses only the objective component.

Again, it is well-established that an overnight guest—which Morgan certainly was if he was not a tenant—typically has "an expectation of privacy in [his host's] home that society is prepared to recognize as reasonable." *Olson*, 495 U.S. at 96–97. A family member that resides in a home also typically has a Fourth Amendment interest in the home even though he does not have an ownership interest. *See Bumper v. North Carolina*, 391 U.S. 543, 548 n.11 (1968). A line of cases has developed, however, holding that society is not prepared to recognize as reasonable the expectation of privacy of someone whose presence at a location is wrongful. The wrongful presence principle was first mentioned in *Jones v. United States*, 362 U.S. 257 (1960), and reiterated in *Rakas*. In *Rakas*, the Supreme Court gave the following example of when wrongful presence defeats a reasonable expectation of privacy: "A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of

14

privacy, but it is not one which the law recognizes as legitimate." *Rakas*, 439 U.S. at 143 n.12 (quotation marks omitted).

The Government argues that under this line of cases, Morgan cannot show that he had an objectively reasonable expectation of privacy at the Broad Street residence because he was statutorily prohibited from living there due its proximity to a daycare. Gov't Suppl. Br. 11–12. While this argument has intuitive appeal, the Court finds that the wrongful presence principle does not apply in this case and thus the statutory ban does not vitiate the reasonable expectation of privacy Morgan had as a permitted guest living at his sister's house.

The wrongful presence principle has been applied in two major categories of cases involving residences: first, where an individual has no right under property principles to possession of a property; second, where a court has specifically prohibited an individual from being present at a location. The first category of cases covers trespassers and squatters who have no legal right to possession under property law. *See, e.g.*, *United States v. Gale*, 136 F.3d 192, 195 (D.C. Cir. 1998) ("[T]o the extent that Gale used or resided in the apartment, he did so without permission of its tenant. Without legal authority to be there, Gale lacked the 'legitimate expectation of privacy' in the premises required to challenge the search."); *United States v. Ruckman*, 806 F.2d 1471, 1473 (10th Cir. 1986) (finding that a person living in a cave on federal lands had no objectively reasonable expectation of privacy). Evicted tenants are also covered by this category because upon eviction, a tenant loses his right to possession or occupancy of a property. *See United States v. Curlin*, 638 F.3d 562, 565 (7th Cir. 2011) (holding that an evicted tenant does not have an expectation of privacy that society is prepared to recognize as reasonable).

15

Recent Eleventh and Eighth Circuit case law holding that an unlicensed, unauthorized driver of a rental car still has a reasonable expectation of privacy as long as he is otherwise in lawful possession of the vehicle supports the idea that this category of wrongful presence is limited to situations where the person's wrongful conduct directly affects his possessory rights under property principles. *See United States v. Cohen*, 38 F.4th 1364, 1370 (11th Cir. 2022); *United States v. Bettis*, 946 F.3d 1024, 1029 (8th Cir. 2020). *But see United States v. Lyle*, 919 F.3d 716, 729 (2d Cir. 2019) (holding that an unauthorized and unlicensed driver did not have a reasonable expectation of privacy).[2] These courts have identified the "common theme in the Supreme Court's examples of individuals whose activities equate to a wrongful presence" as "that their conduct 'interferes with another's valid property interest.'" *Cohen*, 38 F.4th at 1370 (quoting *Bettis*, 946 F.3d at 1029). The circumstances of this case do not fall within this category. Morgan is not like a trespasser, squatter, or evicted tenant who has no right to possession under property law. He had the permission of his sister to live at her home. And his illegal conduct did not interfere with his sister's property interest (that is, he did not steal her home or trespass upon her land).

The second category of cases covers those who are subject to specific court orders, like a protective order, not to enter a particular property. *United States v. Cortez-Dutrieville*, 743 F.3d

---

[2] Prior to *Byrd v. United States*, 584 U.S. 395, 411 (2018), which held that an unauthorized driver of a rental car does not automatically lack Fourth Amendment protection, the Seventh Circuit had held that an unauthorized and unlicensed driver lacked a reasonable expectation of privacy in a rental car. *See United States v. Haywood*, 324 F.3d 514, 516 (7th Cir. 2003). However, the Seventh Circuit subsequently held that an authorized but unlicensed driver has a reasonable expectation of privacy in a rental car. *See United States v. Walton*, 763 F.3d 655, 666 (7th Cir. 2014). And another panel of the Seventh Circuit has called for a revisiting of *Haywood*. *See Sanford*, 806 F.3d at 958. It is not clear whether *Haywood* remains good law post-*Byrd*. Tellingly, the Seventh Circuit recently identified the circuit split between *Cohen* and *Bettis* on the one hand and *Lyle* on the other without citing to *Haywood*. *See Thomas*, 65 F.4th at 926. In any case, because this case does not involve a car, the Court does not believe *Haywood* has any direct application here. And reasoning from *Walton* supports the Court's view that violating the law does not strip one of his Fourth Amendment protections. *See Walton*, 763 F.3d at 663 ("A driver of a car does not lose all Fourth Amendment protections simply because his license is invalid.").

16

881, 884–85 (3d Cir. 2014) (holding that an individual subject to a protective order prohibiting him from entering a home did not have an expectation of privacy that society is prepared to recognize as reasonable); *Commonwealth v. Morrison*, 710 N.E.2d 584, 586 (Mass. 1999) (same).  The reasoning in these cases is that a "specific and valid legal order not to be in [a] particular place" deprives an individual of a reasonable expectation of privacy in that place. *Morrison*, 710 N.E.2d at 586; *Cortez-Dutrieville*, 743 F.3d at 884 (reasoning that a protection order that "prohibited [the defendant] from entering the [relevant] home and from having any contact with [the resident of the home]" stripped the defendant of an objectively reasonable expectation of privacy because his "mere presence in the home violated the order and exposed him to criminal liability").  The Third Circuit in *Cortez-Dutrieville* also found important that the resident's "consent could not override the terms of the protection order." *Id.*

The circumstances of this case do not fall into this second category either.  A recent Seventh Circuit case, *United States v. Walker*, 143 F.4th 889 (7th Cir. 2025), helps explain.  In *Walker*, the Seventh Circuit decided that a defendant had a reasonable expectation of privacy at his girlfriend's mother's house, where he was an overnight house guest, even though residing there "may have violated a condition of his monitored release" requiring him to reside at his own mother's home. *Id.* at 896.  The Seventh Circuit characterized cases like *Cortez-Dutrieville* as "support[ing] a general principle that a person who is legally prohibited from being at a specific residence cannot claim a legitimate privacy interest in that residence." *Id.*  Because "the government identifie[d] no order prohibiting [the defendant] from being at" his girlfriend's mother's house, the Court found the protective order cases did not apply. *Id.*  And the Seventh Circuit "decline[d] to announce a broader rule pursuant to which the Fourth Amendment privacy

17

interest of a person on house arrest extends no further than the home in which the person is ordered to reside." *Id.*

Here, Morgan was not subject to an order prohibiting him from being at the Broad Street residence specifically. One might argue that unlike *Walker*, this case does involve a legal prohibition regarding a particular home, just in the form of a statute rather than a court order. But first, unlike a protective order, the statute at issue does not prohibit Morgan's *presence* within 500 feet of a daycare, just his residing within 500 feet of a daycare. His mere presence at his sister's home did not expose him to criminal liability. And second, the statute does not prohibit presence at one specific location like a protective order but rather defines large swaths of land where a sex offender cannot reside.

Moreover, other Seventh Circuit case law supports a requirement that there be a specific order adjudicating an individual's rights before his expectation of privacy becomes unreasonable. For example, in *Curlin,* a case where the defendant seeking to make a Fourth Amendment challenge had been evicted two weeks prior to the relevant search, the Seventh Circuit noted that its analysis would be different "[h]ad [the defendant's] landlord not obtained an eviction order of which [the defendant] had notice." *Curlin*, 638 F.3d at 566 (collecting cases for the proposition that tenants retain objectively reasonable expectations of privacy until legal action is taken to evict). The court noted that because the defendant "had notice that his continued occupancy had been adjudged to be unlawful," it had "no difficulty concluding that he lacked any objectively reasonable expectation of privacy in the premises." *Id.* Here, at the time of the search, there had been no adjudication of Morgan's right to reside at the Broad Street residence. True, his probation officer had told him he could not reside there. But there had been no court

adjudication that he was not permitted to reside at the Broad Street residence due to his sex offender status.

The Seventh Circuit more recently reiterated the importance of an order adjudging that presence is unlawful in a case where it held that committing fraud or illegal behavior in order to obtain a residence does not undermine a defendant's reasonable expectation of privacy in that residence. *Thomas*, 65 F.4th at 923–25. The defendant used an alias to lease a condo, which was a crime in the state in which the condo was located. *Id.* at 925. But the Seventh Circuit held that because the landlord had not terminated his lease through legal process, the defendant retained his reasonable expectation of privacy. *Id.*

The Seventh Circuit's reasoning in *Thomas* supports the distinction between wrongful conduct that impacts one's lawful right of possession and wrongful conduct that does not. The Seventh Circuit opined that the wrongful presence principle does not extend so far as to mean that "any violation of the law in the causal chain of an interest in property eliminates the need for a warrant." *Id.* It reasoned that someone "who uses illegal drug proceeds to purchase or rent a residence" and "someone who signs a lease while intending not to pay rent—an intent that makes the transaction criminal fraud" would still have reasonable expectations of privacy "until the lease is terminated through legal process." *Id.* The Seventh Circuit also highlighted the difference between a valid interest in possession of a property and a criminal act that does not directly affect that valid interest. *See id.* ("[T]he deed or lease is valid, even if acquiring the property was itself a criminal act."). The same principle would seem to apply here under the reasonable expectation of privacy test—that it was a criminal act for Morgan to reside at the home does not directly affect his right to possess the home through Norville's permission.

19

Accordingly, his reasonable expectation of privacy would remain until a court, after proper process was given, adjudged that his residing at the Broad Street residence was unlawful.

Because Morgan was at least a welcomed overnight guest at the Broad Street residence, he had a reasonable expectation of privacy in that home and its curtilage. That a statute prohibited him from residing there does not alter his reasonable expectation of privacy without a court order adjudging that his presence or residence was unlawful.

## CONCLUSION

Because Officer Lewis intruded into a constitutionally protected area without a warrant, his arrest of Defendant Steven Louis Morgan, and the subsequent search incident to arrest, violated the Fourth Amendment. Accordingly, the motion to suppress, ECF No. 16, is GRANTED.

Entered this 24th day of June, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE

20